UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DUNKIN' DONUTS, INC.;　　　　　　　　　)
BASKIN-ROBBINS USA CO.;　　　　　　　)
TOGO'S EATERIES, INC.;and　　　　　　　)
THIRD DUNKIN' DONUTS REALTY, INC.,　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　) No: 05 C 4770
　　　　　　　　　　　　　　　　　　　　)
TEJANY & TEJANY, INC., et al.　　　　　) Judge John W. Darrah
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

The Plaintiffs, franchisor entities and a real estate entity, filed suit against numerous franchisee corporations and certain individual stockholders, alleging breach of franchise agreements, breach of related leases, as well as improper use of trademarks, trade names, and trade dress under the Lanham Act. Currently before the Court are the Defendants' Motions to Dismiss.

## LEGAL STANDARD

A motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), applies the same standard as a motion to dismiss brought under Rule 12(b)(6). *E.g.*, *Alexander v. City of Chicago*, 994 F.2d 333, 335 (7th Cir. 1993). The court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326

(7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim (with the exceptions found in Federal Rule of Civil Procedure 9, which is not applicable here). *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## BACKGROUND

The facts, for the purposes of this motion, are taken as true and correct from the Plaintiffs' Complaint, the Franchise Agreements, and the August 17, 2005 and August 31, 2005 Notice of Default and Termination letters.[1]

Three of the Plaintiffs – Dunkin' Donuts Inc., Baskin-Robbins USA, and Togo's Eateries, Inc. – are sister-company franchisors. They are separate corporations, but they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" or "trombo" shops. (Compl. ¶ 4). The fourth plaintiff, Third Dunkin' Donuts Realty, Inc., is a subsidiary of Dunkin' Donuts, Inc., which leases properties to Dunkin' Donuts franchisees. (Id. at ¶ 5). The corporate Defendants are each franchisees of the Plaintiffs, and the individual

---

[1] Although consideration of documents "outside the pleadings" may require conversion of a motion to dismiss into one for summary judgment, that is not the case for documents integral to the plaintiffs' allegations, even if those documents are not attached to the complaint. Continental Cas. Co. v. American Nat'l Ins. Co., 417 F.3d 727, 731 n. 2, 3 (7th Cir., 2005). Here, the Franchise Agreements and the termination letters are integral to the Plaintiffs allegations.

Defendants are stockholders. Collectively, the Defendants franchise nineteen Dunkin' Donuts shops, including one Dunkin' Donuts/Togo's combo, nine Dunkin' Donuts/Baskin-Robbins combos, and two Dunkin' Donuts/Baskin Robbins/Togo's trombo shops. (Id. at ¶¶ 6 - 28, 55).

The Franchise Agreements signed by the corporate Defendants are identical or virtually identical. (Compl. ¶ 56). Under the terms of this document, the Defendants made several agreements, for example: to comply with all applicable civil and criminal laws, rules, regulations, ordinances, and orders of public authorities (Franchise Agreement § 5.1.7); to refrain from performing, directly or indirectly, any act injurious or prejudicial to the goodwill associated with the Plaintiffs' proprietary marks and systems (Franchise Agreement §§ 8.1.1 and 8.A.1); to keep full, complete, and accurate books and accounts in accordance with generally accepted accounting principles (Franchise Agreement §§ 5.2 and 5.H). (Compl. ¶¶ 57-59). In return, the Defendants are authorized to use the Dunkin' Donuts' (and, where applicable, Baskin-Robbins and/or Togo's) trademarks, trade names, and trade dress. (Id. ¶ 55). The Defendants also agreed that if the terms of the Franchise Agreements were violated, the Plaintiffs could terminate the Agreements. The Franchise Agreements contain a "cross default" provision, by which termination of one of the franchise agreements constitutes good cause for the termination of all of the other franchise agreements. (Id. ¶ 64-65). Also, the termination of the Franchise Agreements gives Plaintiff Dunkin' Realty the right to terminate the leases. (Id. ¶ 67-71). Further, the Defendants agreed that, upon termination, they would comply with all post-termination obligations, including immediately ceasing to use the Plaintiffs' trademarks and any methods associated with the Dunkin' Donuts, Baskin-Robbins, and Togo's systems. (Id. ¶ 61). The

Defendants agreed that any unauthorized or continued use of the marks after termination constitutes irreparable harm subject to injunctive relief. (Id. ¶ 60).

The gravamen of the Plaintiffs' complaint is the allegation that, for several years, the Defendants failed to comply with the federal and state wage and hour laws by failing to pay their low-level store employees overtime rates for work required to be performed in excess of forty hours per week – in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a). (Compl. ¶ 73). Concomitant with the alleged wage and hour violations is the failure to pay the correct federal and state payroll taxes. (Id. ¶ 74). The Plaintiffs allege that this conduct has been, and continues to be, injurious and prejudicial to the goodwill associated with the Plaintiffs' proprietary marks and franchise systems in breach of the Franchise Agreements. (Id. ¶ 76). Based on the foregoing, the Plaintiffs allege that the Defendants have failed to substantially comply with their obligations under the Franchise Agreements and leases and that the conduct constitutes good cause for termination of these contracts. (Id. ¶ 77).

As a result, on August 17, 2005, the Plaintiffs sent the Defendants a Notice of Default and Termination, terminating each of the Franchise Agreements, effective immediately upon Defendants' receipt of the Notice.[2] On August 18, 2005, the Plaintiffs brought this five-count complaint. In Counts I and II, the Plaintiffs allege that the Defendants' conduct constitutes a material breach of the Franchise Agreements and the leases, respectively, and that these breaches constitute good cause for terminating the Agreements and the leases. (Compl. ¶ 83-84, 86-87).

---

[2] There is some dispute as to when the Notice of Default and Termination letters were sent. According to the Defendants, the letters were postmarked August 19, 2005, a day after the Complaint was filed.

In Counts III - V, the Plaintiffs allege that the continued use of the Plaintiffs' trademarks and trade names outside of the scope of the Franchise Agreements violates several provisions of the Lanham Act. (Id. ¶¶ 89-101). Specifically, the Plaintiffs bring claims of trademark infringement (Count III), in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and unfair competition (Count IV) and trade dress infringement (Count V), in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

## ANALYSIS

In support of their Motion to Dismiss, the Defendants assert that the Plaintiffs violated the Franchise Agreements and the Illinois Franchise Disclosure Act, 815 ILCS 705, by failing to provide the Defendants with notice and opportunity to cure prior to termination or suing to enforce defaults and terminations. The Defendants argue that the Plaintiffs did not offer an opportunity to cure, and thus, that the Plaintiffs must rely on one of the grounds for immediate, (or "No Cure Period"), termination set forth in the Franchise Agreements, at Section 9.1.4. The Defendants assert that the only applicable "No Cure Period" grounds for termination that can be inferred from the allegations of the Complaint would involve allegations of falsification of data and fraud. The Defendants also assert that the only other potentially applicable grounds for "No Cure Period" termination are limited to: bankruptcy; use of the unit for illegal purposes; criminal conviction; abandonment of the franchise; intentional underreporting of gross sales; or receipt of a previous notice of default from the Plaintiffs. As a result, according to the Defendants, the only conduct that could be inferred to fall within the "No Cure Period" grounds for termination is Plaintiffs' allegation, based on "information and belief," that the franchisees engaged in a

"fraudulent scheme to avoid paying federal and state payroll taxes." The Defendants allege that this "fraudulent scheme" is not pled with particularity as required by Fed.R.Civ.P. 9(b), and, thus, must be dismissed.

Upon reading of the Complaint and the Franchise Agreements, it does not appear beyond a doubt that the Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. First, the Franchise Agreements at Section 9.1.4 (the "No Cure Period" section) states that "No cure period shall be available if the FRANCHISEE is in default under any paragraph designed 9.0.1 through 9.0.4 above . . . . " Section 9.0.2 provides that the Franchise Agreement can be terminated without opportunity to cure, "if FRANCHISEE is convicted of or pleads guilty or '*nolo contendere*' to a felony, a crime involving moral turpitude, or any crime or offense that FRANCHISOR believes is injurious to the System(s), the Proprietary Marks or the goodwill associated therewith, *or if the Franchisor has proof that FRANCHISEE has committed such a felony, crime or offense*." (Emphasis added). Section 9.0.3 further allows termination sans opportunity to cure where the "FRANCHISEE permits the use of the Unit or Premises for illegal or unauthorized use . . . ." Here, the Plaintiffs plead that they believe a crime has been committed that is injurious to the goodwill of the Franchisors, as well that they believe that the franchises were used for illegal or unauthorized purposes because of the alleged wage and hour violations. Further, while the Illinois Franchise Disclosure Act is more stringent in the requirements for termination of franchise agreements, here, the Plaintiffs sufficiently plead facts sufficient to sustain Counts I and II. The Plaintiffs have alleged that the Defendants have violated wage and hour laws over a period of years. As a result, they have sufficiently pled repeated violations, for which good cause without the requirement of notice and opportunity to

cure exists, as provided in 815 ILCS 705-19(c)(4). As a result, Counts I and II should not be dismissed for failure to allow a cure period.

Further, the Plaintiffs have not pled a fraud claim; and, thus, Rule 9(b) does not apply as a matter of law. *Fidelity Nat. Title Co. v. Law Title Ins. Co., Inc.*, 04-C-6382, 2005 WL 1126899 (N.D.Ill. May 3, 2005). It is true that some actions are so intrinsically tied to fraud actions that even in the absence of a pleading fraud, Rule 9(b) applies, the claim here, rooted firmly in contract law, is not one of those actions.

The Defendants further assert that the Lanham Act claims (Counts III - V) should be dismissed because they claim that the franchisees, at all relevant times, had consent to use the trademarks, trade dress and business methods of Plaintiffs. The Defendants claim the Termination letters sent on August 17, 2005 and August 31, 2005 establish that the franchisees' continued use of the trademarks, trade names, and trade dress are with the continued authorization of the Plaintiffs. The Plaintiffs, in response, refer to other parts of those letters. This raises factual issues, which are not properly addressed in resolving Defendants' motions.

Considering the Complaint, the Franchise Agreements, and, to a limited extent, the letters of August 17 and 31, 2005, it does not appear beyond a doubt that the Plaintiffs can prove no set of facts in support of their Lanham Act claims which would entitle them to relief. As a result, Defendants' Motions as to Counts III - V are denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are denied.

Dated: January 18, 2006

JOHN W. DARRAH
United States District Judge